### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CAROLYN DAVID, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No.: |
| ) | |
| TKG STORAGEMART PARTNERS, L.P. ) | |
| ) | |
| <u>Serve Registered Agent at</u>: ) | JURY TRIAL DEMANDED |
| Corporation Service Company ) | |
| 2900 SW Wanamaker Dr. Ste. 204, ) | |
| Topeka, Kansas 66614 ) | |
| ) | |
| Defendant. ) | |

### DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates the Federal Court in Kansas City, Kansas as the place of trial.

### COMPLAINT

COMES NOW Plaintiff Carolyn David ("Plaintiff"), by and through the undersigned counsel, and states and alleges the following against Defendant TKG StorageMart Partners, L.P. ("Defendant").

### NATURE OF THE CLAIM

1. This action for legal and equitable relief arises under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA/ADAA") and the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").

2. Plaintiff seeks all relief allowed by the ADA/ADAA and FMLA, to remedy her claims.

## PARTIES

3. Plaintiff Carolyn David is, and, at all times relevant to the allegations in this Complaint, was a resident and citizen of the State of Kansas.

4. At all times relevant herein, Plaintiff was employed by Defendant.

5. Upon information and belief, Defendant is a Limited Partnership registered under the laws of Missouri, and conducting business in the State of Kansas.

6. Upon information and belief, Defendant employs more than fifteen (15) persons within the State of Kansas and, at all relevant times herein, was an "employer" within the meaning of the ADA/ADAA.

7. Defendant is an entity, and is thus incapable of acting on its own behalf and therefore acts through agents. It is liable for the conduct of its agents, including but not limited to the individuals named herein, acting within the course and scope of their employment and/or agency, its own negligence, the acts of its employees and/or agents which it ratifies, injuries incurred by employees and/or agents' performance of its non-delegable duties, and acts its employees and/or agents take by virtue of their agency or employment with Defendant.

8. At all times mentioned herein, each of Defendant's employees referenced in this Complaint were the agents, servants, and employees of Defendant who were all acting within the course and scope of their employment and/or agency with Defendant.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the federal laws: the ADA/ADAA and the FMLA.

10. All or a substantial portion of Defendant's unlawful employment practices complained of herein occurred in Kansas, and, accordingly, jurisdiction and venue are proper in

this Court pursuant to 28 U.S.C § 1391(b).

## CONDITIONS PRECEDENT

11. **On or about November 19, 2019,** Plaintiff submitted a Charge of Discrimination ("Charge") regarding employment discrimination and retaliation to the Equal Employment Opportunity Commission ("EEOC"). The EEOC assigned No. 563-2020-00473 to the Charge. A true and correct copy of the Charge is attached hereto as **Exhibit A** and incorporated herein by reference.

12. **On or about May 21, 2020**, the EEOC issued a Notice of Right to Sue concerning Charge No. 563-2020-00473. A true and accurate copy of the Right-to-Sue Notice is attached hereto as **Exhibit B** and is incorporated herein by reference.

13. This action has been timely filed with this Court, and Plaintiff has met all conditions precedent to filing this action.

## FACTUAL ALLEGATIONS

14. Plaintiff was employed with TKG StorageMart Partners, L.P. for more than four years, since approximately June 2015, at its location of 1285 West Dennis Avenue in Olathe, Kansas.

15. Throughout Plaintiff's employment, her performance was outstanding.

16. Plaintiff was the No. 1 sales associate in the entire company for more than three years, and was recognized on a company-wide level for her accomplishments.

17. In January 2019, Defendant's Regional Vice-President, Keven Boggs, her new Regional Manager, Andy Morrow, and her old Regional Manager, Nick Farran, approached her to ask if she would be interested in managing a new store that the company had just bought.

18. Mr. Boggs, Mr. Morrow, and Mr. Farran told Plaintiff that the owner of the

company wanted the "best of the best" working at this new location, and they wanted Plaintiff to manage it.

19. Plaintiff explained that her commute to the new location would be much longer, but they talked her into relocating her family to Overland Park.

20. In or about April 2019, Plaintiff moved her four children from the only house they had ever known in Wellsville, Kansas, to an on-site apartment at Defendant's Overland Park location that the company provided to Plaintiff, rent-free.

21. On April 15, 2019, Plaintiff had to take leave under the Family and Medical Leave Act ("FMLA") for a hernia surgery.

22. When Plaintiff returned to work in May 2019, her new boss, Regional Manager, Scott Dolehanty, told her on her first day back from leave that her "head [was] on the chopping block" and she was "about to get fired."

23. Mr. Dolehanty later ensured that Plaintiff was terminated.

24. In June 2019, Plaintiff was in a car accident through no fault of her own.

25. As a result of this accident, Plaintiff suffered from a concussion, whiplash, and a closed brain injury which causes her to have problems with short-term memory and the ability to retain new information.

26. Plaintiff had to undergo physical therapy for seven weeks as a result of this accident.

27. Because of Plaintiff's impairments, she communicated several requests for reasonable accommodations to Defendant, to assist her with her daily work activities.

28. Defendant failed to engage in an interactive process to reasonably accommodate Plaintiff in accomplishing her daily work activities.

4

29. Defendant failed to provide any reasonable accommodations for Plaintiff's brain injury.

30. At the beginning of August 2019, Plaintiff told Mr. Dolehanty that she would need a day off on August 28, 2019 to attend a mediation.

31. Mr. Dolehanty asked for proof of the mediation, and Plaintiff's attorney emailed him a confirmation of the mediation in which Plaintiff was required to appear.

32. Mr. Dolehanty asked Plaintiff to log her request for time off in the ADP system which kept track of employees' hours.

33. However, because of Plaintiff's brain injury that caused difficulty with short-term memory, she forgot to log her request for time off in the ADP system.

34. On August 28, 2019, while Plaintiff was in the mediation, Mr. Dolehanty called her cell phone.

35. Plaintiff could not answer the phone during the mediation session when Mr. Dolehanty called. Therefore, she texted Mr. Dolehanty to remind him that she was attending mediation.

36. Mr. Dolehanty responded that it was not a problem.

37. At around the same time, in August 2019, Plaintiff asked Defendant for the paperwork to request additional FMLA leave to deal with the consequences of her brain injury.

38. Defendant provided Plaintiff with paperwork to be filled out by her doctor.

39. After Plaintiff's doctor filled out the paperwork and faxed it to Defendant, Defendant advised Plaintiff that it needed more information and emailed her a form.

40. However, it was unclear from the form what additional information was being requested from Plaintiff.

41.     Therefore, Plaintiff asked Human Resources for clarification on or about August 29, 2019, but did not receive any response.

42.     Defendant did not provide the additional FMLA leave to Plaintiff.

43.     Plaintiff was terminated on August 30, 2019, because of an alleged "no call, no show" on August 28, 2019, when Plaintiff was attending the mediation about which she had previously informed Defendant.

44.     On information and belief, Defendant's purported reason for Plaintiff's termination was pretext for Defendant's discriminatory and/or retaliatory motives on the basis of her disability, and/or because Plaintiff availed herself of her FMLA rights.

45.     After Plaintiff was notified of her termination, she contacted HR to explain the circumstances of her absence on August 28, 2019. However, Defendant refused to employ Plaintiff.

## COUNT I
### ADA/ADAAA – Discrimination
**(42 U.S.C. § 12101 *et seq.*)**

46.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

47.     The ADA/ADAAA prohibits discrimination against a person who has, is regarded as having, or has a record of a disability, i.e., a physical or mental impairment that substantially limits one or more major life activities.

48.     "Major life activities" as defined in the ADA/ADAAA include the operation of a major bodily function, including but not limited to neurological and brain functions.

49.     Plaintiff's brain injury constituted a physical and/or mental impairment that substantially limited her major life activities, including but not limited to brain function and the

6

ability to recall and retain information.

50. Nevertheless, Plaintiff could perform the essential functions of her job with or without reasonable accommodations.

51. Plaintiff requested reasonable accommodations for her disability, and/or the need for reasonable accommodations was obvious to Defendant.

52. Defendant engaged in conduct prohibited by the ADA/ADAAA, including but not limited to failing to engage in an interactive process to determine reasonable accommodations for Plaintiff, despite Plaintiff's several requests for reasonable accommodations; failing and/or refusing to provide reasonable accommodations for Plaintiff's disability; and/or terminating Plaintiff's employment.

53. The conduct and actions by the above-described perpetrators, including but not limited to Mr. Dolehanty, were performed on the basis of Plaintiff's disability and constitute discrimination based on disability.

54. Plaintiff suffered tangible adverse employment actions as a result of Defendant's conduct as referenced herein, including but not limited to the termination of her employment.

55. The conduct of Defendant, described herein, would have detrimentally affected a reasonable person in Plaintiff's position.

56. Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

57. Defendant's treatment of Plaintiff was punitive in nature and was based upon Plaintiff's status as a person who has, is regarded as having, or has a record of a physical and/or mental impairment that substantially limits one or more major life activities.

58. Supervisory and management-level employees knew or should have known of the

discrimination, but failed to appropriately address the problem and further failed to implement effective and appropriate procedures to stop discrimination against Plaintiff based on her disability.

59. Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment in her favor and against Defendant on Count I of her Complaint; for a finding that she has been subjected to unlawful discrimination as prohibited by the ADA/ADAAA; for an award of compensatory and punitive damages; for reinstatement or an award of front pay; for pre-judgment and post-judgment interest as provided by law; for her costs expended herein; reasonable attorneys' fees, as contemplated by 42 U.S.C. § 12205; and for such other and further relief as this Court deems just and proper.

## COUNT II
### ADA/ADAAA – Retaliation
### (42 U.S.C. § 12203)

60. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

61. The ADA/ADAAA prohibits retaliation against an individual who has opposed disability discrimination under the ADA/ADAAA.

62. Plaintiff engaged in protected activity by requesting reasonable accommodations and/or opposing discrimination based on her disability and/or perceived disability and/or record of disability.

63. Plaintiff's actions in requesting reasonable accommodations for her disability and exercising her right to return to work constituted protected activities under the ADA/ADAAA.

64. As a result of Plaintiff's protected activities, Defendant subjected Plaintiff to adverse employment actions as alleged herein, including but not limited to terminating Plaintiff's employment.

65. Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

66. At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful.

67. Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

68. Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment in her favor and against Defendant on Count II of her Complaint; for a finding that she has been subjected to unlawful retaliation as prohibited by the ADA/ADAAA; for an award of compensatory and punitive damages; for reinstatement or an award of front pay; for pre-judgment and post-judgment interest, as provided by law; for her costs expended herein; reasonable attorneys' fees, as contemplated by 42 U.S.C. § 12205; and for such other and further relief as this Court deems just and proper.

### COUNT III
### FMLA Interference

69. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

70. Plaintiff was a stellar employee who had not been disciplined, placed on a performance improvement plan, or given a poor performance evaluation before she took FMLA leave beginning in April 2019.

71. Plaintiff was employed by Defendant and worked more than 1,250 hours in the 12 months prior to her FMLA leave in April 2019. Plaintiff worked for Defendant at a location where 50 or more employees of Defendant worked within 75 miles. Thus, Plaintiff was qualified to utilize FMLA leave.

72. Plaintiff exercised her FMLA rights and took FMLA leave for approximately four weeks, starting in approximately April 15, 2019 in connection with her hernia surgery.

73. In exercising her rights under the FMLA, Plaintiff complied with all of Defendant's policies and procedures for using or taking FMLA leave.

74. When Plaintiff returned to work following her hernia surgery, Plaintiff's supervisor, Mr. Dolehanty, told Plaintiff that her "head [was] on a chopping block" and that she was "about to get fired."

75. Following Plaintiff's car accident and resulting brain injury in June 2019, she again exercised her FMLA rights by requesting additional FMLA leave to address her injuries.

76. Rather than granting Plaintiff's initial request for additional FMLA leave, Defendant sought further information related to her leave request. The additional information sought was unclear. When Plaintiff requested clarification from Defendant regarding the additional information needed, Defendant failed to respond and simply terminated her employment.

77. Instead of granting Plaintiff's reasonable request for additional FMLA leave, Defendant terminated Plaintiff's employment.

10

78. Defendant interfered with Plaintiff's right to take additional FMLA leave, for which she was eligible and qualified, by failing and/or refusing to grant such leave, and instead by terminating her employment.

WHEREFORE Plaintiff prays for judgment against Defendant on Count III of her Complaint for a finding that she has been subjected to unlawful interference, in violation of the FMLA; for an award of compensatory damages, including lost bonuses, cost of living increases and other benefits including interest; for an award of liquidated damages; for equitable relief in the form of reinstatement or an award of front pay; for her reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action; and such other and further relief as to the Court deems just and equitable.

## COUNT IV
## FMLA Retaliation

79. Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

80. Plaintiff was employed by Defendant and worked more than 1,250 hours in the 12 months prior to her request for FMLA leave in April 2019.

81. Plaintiff worked for Defendant at a location where 50 or more employees of Defendant worked within 75 miles.

82. Plaintiff was a stellar employee who had not been disciplined, placed on a performance improvement plan, or given a poor performance evaluation before she took FMLA leave in April 2019.

83. Plaintiff exercised her FMLA rights and took FMLA leave for approximately four weeks, starting in approximately April 15, 2019 for her hernia surgery.

84. In exercising her rights under the FMLA, Plaintiff complied with all of Defendant's policies and procedures for using or taking FMLA leave.

85. Immediately upon Plaintiff's return from FMLA leave, and as a result of her taking FMLA leave, Plaintiff's supervisor, Mr. Dolehanty, told Plaintiff that her "head [was] on a chopping block" and that she was "about to get fired."

86. Defendant retaliated against Plaintiff as a result of her decision to exercise her rights under the FMLA.

87. Plaintiff was treated less favorably than other employees who had not requested leave under the FMLA.

88. Defendant took adverse employment actions against Plaintiff, in retaliation for availing herself of her FMLA rights, including but not limited to by terminating Plaintiff's employment.

89. A reasonable person in Plaintiff's position would have found Defendant's actions against and treatment of Plaintiff, after she exercised her FMLA rights, to be materially adverse.

WHEREFORE Plaintiff prays for judgment against Defendant on Count IV of her Complaint, for a finding that she has been subjected to unlawful retaliation in violation of the FMLA; for an award of compensatory damages, including lost bonuses, cost of living increases and other benefits including interest; for an award of liquidated damages; for equitable relief in the form of reinstatement or an award of front pay; for her reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action; and such other and further relief as to the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all counts of the Complaint.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas, as the place of trial.

            Respectfully submitted,

            HOLMAN SCHIAVONE, LLC

By:  */s/ Kathleen E. Mannion*
      Anne Schiavone, KS Bar #19669
      Kathleen E. Mannion, KS Bar #25362
      **Holman Schiavone, LLC**
      4600 Madison Avenue, Suite 810
      Kansas City, Missouri 64112
      (816) 283-8738 Telephone
      (816) 283-8739 Facsimile
      aschiavone@hslawllc.com
      kmannion@hslawllc.com

      *ATTORNEYS FOR PLAINTIFF*